NEWYORK,
May, 1816.

Cook
v.
Howard.

A capture, and an immediate recapture, does not devest the property of the original owner.

Property taken in a battle on land does not vest in the captor, at least, until after the termination of the battle; and if it be taken during the battle, the title of the original owner is not devested

Plunder taken from the enemy, in a war on land, belongs to the sovereign of the captor

Where a horse, belonging to the *United States,* was taken by the enemy, and shortly after retaken by the plaintiff, who continued in the possession until it was taken from him by the defendant, an officer in the army of the *United States,* acting under the orders of a superior officer; it was held, that the plaintiff could maintain an action of trespass against

IN ERROR, to the court of common pleas of the county of *Niagara.*

This was an action of trespass, *de bonis asportatis,* for taking a horse belonging to the plaintiff. The defendant pleaded, 1. Not guilty. 2. That the horse was the property of the *United States,* and that one Major *Garner,* of the 25th regiment of *United States'* infantry, and senior officer and commandant, commanded the defendant, being a captain in the said regiment, to take the horse, and deliver him to the quarter master of the regiment; that the defendant took the horse, by virtue of such order, and delivered him to the quarter master, which are the same, &c. To the second plea, the plaintiff protesting, &c., replied, that the defendant took the horse of his own wrong, and traversed that the *United States* were lawfully possessed of the said horse.

The cause was tried in the *February* term, 1815, of the court below, and it was proved on the trial, that the horse in question had, previously to the 19th of *December,* 1813, been delivered to one *St. John,* (who then acted as a wagon master,) by a deputy, or assistant quarter-master general of the *United States;* that, on the 19th of *December,* when the enemy drove the inhabitants from *Lewistown,* the horse was taken from *St. John* by an *Indian* in the service of *Great Britain;* that, immediately

the defendant to recover the value of the horse, no authority from the *United States,* to take the horse, having been shown by the defendant; and it is to be presumed, until the contrary be shown, that the *United States* never intended to interpose any claim to the property.

In trespass, *de bonis asportatis,* the defendant cannot show property in a stranger; although it is otherwise in trover.

after taking him, the *Indian*, on the horse, pursued the plaintiff, who, with others, was fleeing from the enemy ; that the plaintiff discharged a gun, or musket, at the *Indian*, who fell from the horse (as was believed) dead ; that the plaintiff shortly after took the horse, and kept him in his possession until the month of *April*, 1814, when the defendant, being an officer of the *United States'* army, acting in pursuance of an order from an officer commanding a detachment of *United States'* troops, stationed near where the horse was kept, took the horse from a stable, and informed the plaintiff that he had taken the horse as the property of the *United States*.

The court below charged the jury that the defendant could acquire no property in the horse until adjudication, by a court of the *United States*, and that the defendant was justified in taking the horse, the commandant of the detachment having a right to give the order which he did. The jury found a verdict for the defendant below ; and a bill of exceptions having been tendered by the plaintiff, to the opinion of the court, the cause was removed into this court by writ of error.

*N. Williams*, for the plaintiff in error, contended, 1. That by the capture and recapture, the property in the horse, by the common law, became vested in the plaintiff. There is a difference between the law of nations and the *common law*, on this subject. By the latter, the *subject* was entitled to goods taken from an enemy of the king, in time of war.* He who takes such goods from the enemies of the king, which were before taken from an *Englishman*, shall have it, as a thing gained in battle, and not the king, the admiral, nor the party to whom the property was before, because the party did not come freshly the same day it was taken from him, and before sunset, and claim it.† This is the common law of *England*. It is also the law of war, in ancient and modern times. It is a principle of public policy. The question is to be decided rather by the common law than the law of nations ; but the law of nations, on this subject, is no less clear and decisive. A recapture is considered as a capture from the last possessor, and the last captor acquires the right of property in the goods taken. It is true most of the writers lay it down, that the right of *postliminium*, in regard to moveables, continues during twenty-four hours after the capture ; and such seems to be the generally received prin-

*margin notes:*

NEW YORK, May, 1816. COOK v. HOWARD.

* 1 *Wils. Rep.* 213. *Morrough* v. *Comyns, per Wright,* J. *Registl.* 102. b. *Bro.* tit. *Property, pl.* 18. 38.

† 18 *Vin. Ab.* 67. tit. *Property,* (D.) *pl.* 3. *note. Br. Forfeit. pl.* 57. *Id. Chattels, pl.* 22. *Id. Property pl.* 38. 7 *Ed.* IV. 14. S. C. cited 3 *Vent.* 174.

NEW YORK,
May, 1816.

Cook
v.
Howard.

* 2 Azuni. Mar. Law, 275, 276. Vattel, B. 3 c. 13. s. 196. Martens, B. 8. c. 3. s. 11, 12; Chitty's L. of N. 98.

ciple, though some writers even contend, that the booty must be carried *infra præsidia*, before the property is changed.* *Vattel* says, that the property, in moveables, is acquired the very moment they come into the power of the enemy, and if he sells them to neutrals, the first proprietor has no right to reclaim them. (a) The space of twenty-four hours, as well as the custom of the sea, in this respect, is an institution of the *pactitious* or conventional law of nations, or of custom, or, in short, of the civil law of certain states. It is not, then, a principle of the universal law of nations, that the goods must remain twenty-four hours in the possession of the captor before the property is changed. And the civil, or *common law of England*, has settled this question as to goods taken from an enemy on land. *Blackstone*† lays down the rule already mentioned, that "if an enemy take the goods of an *Englishman*, which are, afterwards, retaken by another subject of the kingdom, the former owner shall lose his property therein, and it shall be indefeasibly vested in the second taker, unless they were retaken the same day, and the owner, before sunset, put in his claim of property." And this, he says, was agreeable to the law of nations, as understood in the time of *Grotius*, even as to captures at sea. The only case to be found in any writer, is that mentioned by *Vattel*, of the town of *Lierre*, which was taken and retaken on the same day.‡ The claim put in, in this case, was not until six months after the recapture.

† 2 Bl. Com. 401.

‡ See *Thuanus*. *Hist.* lib. 13.

2. As to the necessity of *condemnation*, it is not denied, in regard to *maritime* captures, that it may be necessary to confirm the property in the captor. Such appears to be the law as understood in *England*§ and in this state.‖ But, as to captures on land from a public enemy, they are not the proper subjects for judicial proceedings, by libel and condemnation. No maritime court can have jurisdiction in such a case.** In *Le Caux* v. *Eden*,†† Lord *Mansfield* observed, that "as to plunder, or booty, in a mere continental land war, without the presence or intervention of any ships, or their crews, it never has been important enough to give rise to any question about it. It is often given to the soldiers on the spot; or wrongfully taken by them, contrary to military discipline. If there be any dispute, it is

§ Chitty's L. of N. 98, 99. Flad. Oyen, 1 Rob. Adm. 134. 3 Rob. Adm. 236, 237, 238. ‖ 1 Johns. Rep. 482. ** 3. Bl. Com. 108. 108. †† Doug. Rep. 614. note.

(a) *La propriété des choses mobiliares est acquise à l'enemi, du moment qu'elles sont en sa puissance; et s'il les vend chez nations neutres, le premiere proprietaire n'est point en droit de les revendiquer.* *Droit des Gens.* lib. 3. ch. 13. s. 196.

regulated by the commander in chief. There is no instance in history, or law, ancient or modern, of any question, before any legal judicature, ever having existed about it in this kingdom."

Suppose, however, that an adjudication of some court is necessary to confirm the property of the captor, shall not his possession be, in the mean time, protected? He has, at least, an *inchoate* right of property, which cannot be devested by force.*

3. But what authority had the defendant, in this case, to seize the horse? Has every military officer power to take, by force, from the possession of a citizen, the property even of the *United States?* It would be a most dangerous and oppressive power, if it existed; but the authority of the defendant to touch this property is wholly denied. If any officer had that power, it must be a *quarter master* of the army, who has the superintendance of the public property, in war, of the *United States,* and who gives security for the faithful performance of his duty. If, then, this defendant had no authority to seize, he has been guilty of a trespass.

*Hawley*, and *Parker*, contra. The capture of the horse, in this case, was followed, almost immediately, by a recapture. The capture by the hostile *Indian* did not transfer the property to him. This case must be decided by the law of nations. *Grotius*† lays down the rule on the subject: " Things are said to be taken in war, when they are so detained, that the first owner has lost all probable hopes of recovering them, and cannot pursue them." And he explains that, when, in other places, it is said that goods taken belong *immediately* to the captors,(a) it is to be understood that they continue so long in their possession that the hope of recovering them is gone. The rule, as to 24 hours' possession, he calls a new or modern doctrine. *Bynkershoek* recognises the same rule, that the property is not changed, until the owner has lost the *spes recuperandi;* and that is not until the property is carried into a place of safety.‡ *Puffendorf,*§ also, accedes to the rule of *Grotius ;* and *Vattel,*‖ when he says, that the property of moveables belongs to the enemy the moment they come into his power, adds, but such things must be actually and truly in the enemies' power, and carried to a place of safety.(b)

_____

(a) *Dig.* 41. 1. *Item quæ ex hostibus capiuntur, jure gentium statim, capientium fiunt.*

(b) *Mais il faut que ces choses la. soient veritablement au pouvoir de l'enemi, et conduites en lieu*

NEWYORK, May, 1816.

COOK v. HOWARD.

* 1 *Wils. Rep.* 212.

† *Grot. de Jure B. et P.* lib. 3. c. 6. s. 3.

‡ *Bynkershoek, Quæst. Jur. Pub.,* lib 1. c. 4. § *Puff. L. of N. and N.* lib. 8. c. 6. s. 20. ‖ *Liv.* 3. c. 13. s. 196.

NEWYORK,
May, 1816,

Cook
v.
HOWARD.
*2 Bl. Com. 401, 402.

† 2 Burr. Rep. 685.

‡ 1 Johns. Rep. 471.

§ Droit des Gens. liv. 3. c. 14, s. 205.

‖ Puff. L. of N. and N. b 8. c. 6. s. 21. Vattel, l. 3. c. 9. s. 164.

** A report of the case, in the National Intelligencer of July 22, 1815, was read by the counsel.

*Blackstone* does not differ from *Grotius*, as to the law of nations, laid down by him and other writers. He does not, however, state the case from the *Year Book* (7 *Edw.* IV. 14.) correctly, and it is the same case which is cited in *Brooke.* The condition is, that the original owner must come freshly or promptly, the same day, to claim his property of the *captor.* Nothing is said of the *recaptor.* In *Goss* v. *Withers*† may be found all the law on the subject, and, also, the case from the year book, in its original language. Lord *Mansfield* says, that the general proposition, that what is taken from an enemy *immediately* becomes the captors, is to be understood, when *the battle is over;* and that is not until all immediate pursuit has ceased, and all hope of recovery is gone. But he says that the rule has been made still more favourable to the owner, in the case of maritime capture, and the property is not changed until there has been a sentence of condemnation; and this principle was adopted, by this court, in the case of *Wheelwright* v. *Depeyster.*‡ The possession of the horse, in this case, by the *Indian*, was temporary; the battle was not over; the conflict still continued. If the property were not devested by the capture, the *jus postliminii* still remained in the *United States*, the original owner. This right takes place, according to *Vattel*,§ "as soon as the things taken by the enemy fall into the hands of soldiers belonging to the same nation, or are brought back to the army, within their sovereign's territories, or the places under his command."

Again, admitting that the *Indian* acquired a property in the horse by the taking, the retaking by the plaintiff enures to the government of the *United States*, whose servant or agent he is, and under whose authority he acts. For *Puffendorf* and *Vattel* both lay it down, that all things, *booty* as well as immoveables, taken from the enemy, belong to the sovereign making the war.‖ Soldiers are but instruments in his hands for asserting his rights. This principle was recognised by judge *Toulman*, of the *Mississippi Territory*, in the case of the *United States* v. *The schooner Active*, tried before him.**

This principle equally applies to a recapture, notwith-

*de sûreté.* ROCCUS says, " *Ut res capta ab hostibus efficiatur ipsorum hostium duo requiruntur: Primum, quod navis capta ducatur intra præsidia ipsium hostium, at ad eorum confines: Secundum, quod ita ducta, ut sit in tuto, nec a militibus occurrentibus momento recuperari possit, et penes eos pernoctarit.*" *De Assecur: Not.* 66.

standing the cases cited from 1 *Wilson* and the *Year Book*; for war is the act of the sovereign or government, whose exclusive right it is to carry it on. No individual can have the right; and if a citizen takes up arms, he acts in subordination to the sovereign.

But it is said, that the defendant had no authority to take the horse from the plaintiff. It is enough that he acted in pursuance of the orders of his commanding officer. It is the duty of every officer of the army to take care of the public property, and a request from the quarter master may be presumed, or the defendant may be considered as quarter master, *pro hac vice.*

*N. Williams,* in reply, said, that the case before Judge *Toulman* was that of a capture by *soldiers,* which was different from the present case of a taking by a private citizen. When war is declared, every citizen is at war with the enemy; and was it ever heard that the government has claimed goods taken from an enemy by its citizens? Captures on land from an enemy, *eo instanti,* change the property.(a) The law as to *maritime* captures is not applicable to this case; and Lord *Mansfield,* in *Goss* v. *Withers,* observes, that writers have drawn lines by arbitrary rules; and many arbitrary circumstances, deemed necessary by them to change the property, have been exploded. That was a case of *insurance,* and decided on the rule as to maritime captures. But admitting the loss of the *spes recuperandi* to be the criterion, it must depend on circumstances; and if this case be tried by that rule, what means of recovery could there be, when the *Indian* was in full possession of the horse, and the owners had abandoned it? It is a principle of the civil law, and of the *jus gentium,* that what we take from an enemy in war becomes instantly our own.* How is the doctrine of the things taken being carried *intra præsidia* of the enemy, to be applied to our *Indian* warfare? But we rest on the common law; and, according to the case cited from the *Year Book,* in *Goss* v. *Withers,* and to be found in all the *abridgments,* the owner must, *promptly,* or

---

(a) *Voet* (ad *Pandect.* lib. 49. tit. 15. s. 3.) does not agree with *Grotius* and others, that it is necessary to carry booty taken from an enemy, *intra præsidia,* in order to vest the property in the taker. " *Verius tamen,*" he says, *etiam ante per solam occupationem dominium prædæ hostibus, acquiri,* &c. And Lord *Mansfield,* in the case cited, seems to incline to the opinion of *Voet;* but he very justly observes, that it is no wonder there is so great uncertainty and variety of notions among writers, about fixing a positive boundary, by the *mere force of reason,* where the subject matter is arbitrary, and not the object of reason alone.

* *Just. Inst.* lib. 2. tit. 1. s. 17. (*Cooper's* ed. p. 73.)

freshly, and before sunset, pursue and claim his property, or his right to it is for ever gone. The law must be the same whether it be a case of recapture or capture. The principle and the reason of it are the same. As between our citizens the common law must be the rule of decision.

THOMPSON, Ch. J., delivered the opinion of the court. If the right of the plaintiff below to maintain this action depended upon the abstract question, as to the right of property, I am satisfied he must fail. It is necessarily to be inferred, from the bill of exceptions, that the property in the horse was, at the time he was taken by the enemy, duly vested in the *United States.* And it is very clear that it was not devested by any thing that took place at the time he was taken by the *Indian.* It is a proposition not to be controverted, that no right could arise from the recapture, unless the property had vested in the captors. Whatever difference of opinion there may have been among the writers on public law, as to the time when, or what is necessary to take place, in order to vest the property in the captors, no approved jurist has gone so far as to maintain, that a mere capture is sufficient for that purpose. It has been generally held, that the property must be carried *intra præsidia,* or remain twenty-four hours in the hands of the captors, or that the *spes recuperandi* must be gone, or that an actual condemnation must take place. But in the case before us, there could hardly be said even to have been a capture. In *Goss* v. *Withers,* (2 *Burr.* 693.) Lord *Mansfield* observed, that nothing could be said to be taken until the battle was over; and this is not until all immediate pursuit has ceased, and all hope of recovery is gone. That was not the case here. The interval between the capture and recapture must have been very short, and during the continuance of the battle. The property in the horse could never, under such circumstances, be considered as vested in the captors. If so, the recapture could not vest it in the plaintiff.

But admitting the right of property had vested in the captors, the better opinion is, that, upon the recapture, it would have belonged to the *United States.* The rule laid down by *Vattel* (b. 3. ch. 9. s. 164.) is the rational one. He says, as the towns and lands taken from the enemy are called conquests, so all moveable things constitute the *booty,* and this booty, naturally, belongs to the sovereign making war, no less than the conquests;

for he alone has such claims against the enemy as to warrant him to seize on his goods, and appropriate them to himself. His soldiers are only instruments in his hands, and whatever they do is in his name, and for him, and he may grant them what share he pleases. Lord *Mansfield*, in *Le Caux* v. *Eden*, (*Doug.* 614. n.,) said, that as to plunder or booty in a mere land war, without the intervention of ships, or their crews, it never had been important enough to give rise to any question about it. It is often given to the soldiers upon the spot, or wrongfully taken by them, contrary to military discipline; and, if there be any dispute, it is regulated by the commander-in-chief. He asserts, that there is no instance in history or law, ancient or modern, of any question, before any legal judicature, ever having existed about it in *England;* and he goes on to observe, that it does not come within the prize jurisdiction.

I have thought proper thus briefly to notice the general question, as to the right of property, as it was gone into, very much at length, upon the argument, though it is unimportant as to the decision of the present case; for, admitting the plaintiff was not the owner of the horse, the defendant had no right to take him out of his possession. He, certainly, was not the owner; and if the horse belonged to the *United States,* the defendant showed no competent authority to take him from the plaintiff. The defendant, it is stated, was an officer of the *United States* army, acting under the orders of an officer commanding a detachment of *United States* troops. Who this officer was, his rank or standing, does not appear. It is not pretended or intimated that he belonged to the quarter master's department, to which the care and charge of the public property more properly belong. But the mere fact of his being an officer, commanding a detachment of troops, could not vest him with the power of taking the property belonging to the *United States* wherever it might be found. It does not even appear that this officer had any command or part in the battle at the time the property was taken. Had any question at that time arisen about it, perhaps the commanding officer, upon that occasion, would have been justifiable in taking possession of the horse in behalf of the *United States.* But the plaintiff had had the peaceable possession of the horse for five or six months; and the interference of the defendant was the act of a mere stranger. He showed no authority from the owner; nor does it appear that the conduct

NEW YORK,
May, 1816.

COOK
v.
HOWARD.

of the defendant has ever been ratified or sanctioned by the United States, or that the horse has ever come into their possession. What has become of him has not been shown. It is true the defendant professed to act in behalf of the *United States*, but, from any thing that appears, this was a mere pretext, and the property was appropriated to his own private use. If this horse belonged to the *United States*, as booty or otherwise, who can say, or has a right to say, according to the doctrine of *Vattel*, that the sovereign shall not give him to the soldier who took him, for his gallant conduct on that occasion? This was a matter resting in the discretion of the government, with whom it belonged to inquire after, and reward merit; and until the contrary be shown, the fair presumption, under the circumstances of the case, is, that the government never intended to interpose any claim to this horse. In an action of trespass, *de bonis asportatis*, it is not competent for the defendant to show property in a stranger to excuse the trespass and justify the taking. If a person has the peaceable possession of a chattel, this gives him a right, as against every body but the rightful owner. In an action of *trover* the defendant may show title in a third person. (11 *Johns. Rep.* 529.) But it is expressly laid down by this court, in *Derrick* v. *Chapman*, (11 *Johns. Rep.* 132.,) that the possession of a chattel is *prima facie* evidence of right, and that a mere stranger could not deprive the party of that possession, without showing some authority, or right derived from the owner, to justify the taking. The judgment of the court below must, therefore, be reversed.

*Judgment of reversal.*